Cases number 22, 14, 13, Lewis v. McDonough. May it please the court, Kenneth Carpenter appearing on behalf of Ms. Lewis. Since this court, excuse me, since this appeal was filed, this court has issued two precedential decisions which affect the outcome of this appeal. Both parties have submitted those decisions as supplemental authority and each of them addressed the two arguments that were presented by Ms. Lewis in her appeal. This court may deem it appropriate to have supplemental briefing in light of that, but otherwise I am prepared to present why I believe the Spicer case controls the first issue and the Guinanus case does not control the second issue. The first issue is the court's interpretation of 38 U.S.C. 1110 which this court addressed in Spicer and confirmed that the veterans court in Spicer relied upon a misinterpretation of 1110. Specifically Spicer clarifies the question of the causation standard under 1110 as simply being a but-for causation standard for the purposes of establishing service connection. Further the court rejected the VA's contention that the but-for causation standard meant to bring something about or the onset or the ideological link in order to establish service connection. The decision of the veterans court in this case therefore should be vacated and remanded for the veterans court to consider this matter under the but-for standard of causation. Specifically in regards to the first or one of the two issues, the left hip pain in which there was specific evidence of record that dealt with the question of whether or not that was secondary to an existing service connected disability. The below Ms. Lewis identified evidence. Mr. Carpenter, I'm sorry. I'm not following what you're saying. Help me understand what the argument was that you made in the original brief and how this case helps you. The original argument was that the veterans court misinterpreted the requirements for entitlement to service connection under 1110 and used a standard. Is this because of the definition of the word claim? Well, not entirely, your honor, but that was part of what the veterans court relied upon in its decision. My understanding is there was an original claim and then during the one-year period there was a supplemental filing, right? I'm sorry, that's the second issue, your honor. That's the 3.156B issue. This case involves a claim for service connection for a left hip condition and a right ankle condition. That issue pertains to the question of the legal standard for establishing service connection based upon pain that was set out in this court's decision in Saunders. The veterans court in that decision or on those two issues, those two claims, relied upon its decision in weight. The decision in weight dealt only with the question of whether or not or what the requirements were for a claimant to demonstrate when pain rises to the level of a compensable rating. That is a question that goes to the rating of the condition, not the entitlement to service connection. The board denied service connection for both left hip pain and for the right ankle. That's the first issue on appeal. Is that the issue that implicated whether there was any limitation or impact on her ability to earn? Yes, your honor. And so is it your contention that something we've said in a recent case changed our law that said you do have to show, in order to show service connection, that there was some impact on her ability to earn an income? I don't believe it changed it, your honor. What it did, in my view, is to clarify it, that the court in Spicer clarified the issue of causation. The issue of causation was not at issue in the Saunders case. At issue in the Saunders case was whether or not pain, in and of itself, constituted a disability. So they weren't dealing with the question of what is the standard to be entitled to service connection. But didn't we deal with this in Frazier? And I thought that what we said in Frazier was that you had, apart from the unusual situation where there are several levels in the diagnostic code, which is not the situation here, that in order to make a claim for pain, you had to come within one of the diagnostic codes. And there wasn't a freestanding entitlement to service connection for pain, confirming our earlier decision in that respect. That's correct. That was the holding in Frazier. But the issue that was addressed by the Veterans Court was not that question. The question addressed by the Veterans Court was whether or not the pain that was in evidence as related to both of these conditions arose to the level that would be entitled to service connection. My assertion is that this court Because of the impact on functionality?  What's the mistake that they made? The mistake is that that goes to the entitlement to compensation, not the entitlement to service connection. And that this court's decision in Spicer I mean, in Frazier, we said you had to come within the rating schedule. There's no separate Frazier specifically said there's no separate claim based on pain. No, Your Honor. But the claims here, as opposed to in Frazier, were based upon an assertion that there was an entitlement to compensation for a left hip injury and a right ankle injury. The basis for the appeal below was the medical evidence of pain. The court below dealt with the question of pain only through the limited lens of whether or not it was or wasn't compensable. That is a different issue than what this court addressed in Spicer, which is what is the legal standard to establish service connection for a condition that may, as in this case, involve pain. But more importantly, with the first condition with the left hip, it involves the question of secondary condition, which was expressly addressed in Spicer. If I can move now to the 3.156B issue. This issue deals separately with claims involving the effective date to be assigned for the award of service connection for tinnitus, for migraine from the first two claims that dealt with service connection. In this case, Ms. Lewis presented to the Veterans Court the question of whether or not 3.156B should have been considered in the first instance in assigning the effective date below. This court has decided the question of giddiness, which dealt with the interpretation of 3.156B, but in a different context in which this court expressly relied upon the fact that the board had made a factual finding that Mr. Giddiness' May 2014 claim did not mention the psychiatric disability or reflect any intent to file the increased disability rating for PTSD, and Mr. Giddiness did not raise a challenge to that finding of fact before the Veterans Court. In this case, there is no such finding. The board did not make a finding because the board didn't consider or apply 3.156B. But there's also, unless I've missed it, so help me if I have, there's no reference anywhere in or around the April filing of any reference to the three conditions that you just listed and made in your December filing. Isn't that right? That is correct, Your Honor. So how could something that she only claimed in December of, I think, 2016, get a date of filing back in April before it was ever even mentioned? And I believe I can explain that, Your Honor, in the facts of this particular case. In the facts of this case, Ms. Lewis sought to reopen the previously denied claims for her right hip and her post-traumatic stress disorder. The VA denied that in July of 2016. Within one year of that decision, Ms. Lewis filed 11 additional disability claims seeking service-connected compensation, including the three conditions that are at issue for effective date here, the tinnitus, the migraine headaches, and the back. What is the first mention of tinnitus, migraine headaches, and back? In that application, Your Honor. In the December application? In the December application. How could that relate back? I'm about to hopefully explain that, Your Honor, because in the decision on appeal below, the March 26, 2019 decision, which is at Appendix 99 to 122, includes a finding of fact that the psychiatric claim and the right and left hip claims were reopened. So that claim that began nine months earlier was reopened. So that claim was, in fact, pending at the time in which this new evidence was received. It's a different claim. It's a different claim, isn't it? They are different claims, Your Honor, in terms of what they're seeking compensation for. They are not different claims in terms of what they're seeking from the VA, and that is the entitlement to compensation. All of these claims merge together based upon this March 2019 decision, which reopened the earlier claims, which then placed them within the same claim stream as the later submitted 11 additional claims, including the three claims. But that argument is predicated, I take it, on the argument that you've made in Good Day Nurse, and I think whether it was you or another advocate made in Manzaneras, in which the argument was that a claim is defined as a request for benefits. That's correct, Your Honor. But I thought Good Day Nurse said pretty clearly that that's not correct, that that's not the right definition of a claim. The claim is a claim for a specific disability. It did so, Your Honor, but it did so predicated upon a specific finding of fact made by the board, which didn't exist here, which goes to the underlying nature of the claim, excuse me, the appeal made by Ms. Lewis, which was that the board had an obligation to consider 3.156B, and the Veterans Court said it did not. That is an interpretation of 3.156B as to whether or not, in precisely the context that you just described, are the successive claims for service-connected compensation, in this case, within a period of nine months, part of a claim stream for service-connected compensation. We believe that that is substantiated by the board's decision, which reopened the predecessor claim and then made that all part of the same claim stream for service-connected compensation. I see that I'm way into my rebuttal time. I'd like to reserve the balance. Okay. Thank you, Mr. Carpenter. Ms. Foncala. Good morning. May it please the Court. As Mr. Carpenter noted, we're dealing with sort of two categories of claims here. There is the left hip and right ankle condition, where the board denied service connection because it found that there was no present disability, and then we've got the back pain, the tinnitus, and the headache, where the board granted service connection, and Ms. Lewis disputes the effective date. Both sets of claims share the similarity that they are precluded, on the one end, by fact findings that the board made and that this Court obviously may not review, and on the other end, by prior binding precedent of this Court that addressed the legal questions. So we'll start with the left hip and the right ankle conditions. Those are the ones where the board found that there was no present disability. I'll note as a procedural matter at the outset, I don't believe Ms. Lewis actually filed a 28-J letter on Spicer, but in any event, that case deals with a later question. The issue of causation is also not an issue in this case because causation only comes into play once you have a present disability. Whether that's primary service connection or secondary service connection, you first have to have a present disability. And the Saunders decision explains that in order to have a present disability, you need to show a pain that reaches the level of functional impairment of earning capacity. And that is precisely what the board, in this case, found did not exist. And that's at Appendix Pages 106 and 107 are those board findings that Ms. Lewis did not have a functional impairment that affected her earning capacity in her left hip or right ankle. And that fact finding, which she did not actually challenge at the Veterans Court either, but certainly is not reviewable at this Court, means that she cannot meet the definition in Saunders. And Saunders explicitly rejected the idea that pain without a functional impairment could be a present disability. The Court, and I'm quoting page 21 of the opinion as issued by the Court, which I think is pages 1367 to 68 in the Federal Reporter, explicitly held that we do not hold that a veteran could demonstrate service connection simply by asserting subjective pain. You have to demonstrate the functional impairment to earning capacity. So we just don't get to the sort of the questions that Ms. Lewis wants to raise about how do you demonstrate service connection where there is a present disability because the board decided this issue at an earlier step in the analysis. With respect to the effective date conditions, the back pain, the tinnitus, and the headache, I think Godinez is on, other than the name of the veteran and the date of the claims is exactly factually analogous to this case. Ms. Lewis, the first time that she submitted a claim for any of these conditions was, well, so she did have an earlier, in 2009 and 2010, she submitted a claim for the back pain and the tinnitus. And that was denied and that denial became final. And so I believe when the board talks about reopening those claims, it's referring to the fact that she had them previously, but that earlier claim stream became final. It's certainly not referring to reopening the April 2016 decision, which didn't raise those conditions at all. And for the headache, the board specifically found that the first time she raised a claim for a headache anywhere in any of her submissions was the December 2016 claim. And so she already has an effective date that is the earliest time that she has brought these conditions to, and the earliest claim stream that she has for these conditions at the VA. And 3.156 is just not applicable in this circumstance. Conceivably, had she tried to reopen her PTSD claim, for example, and submitted evidence to that, that would be a situation where we would consider whether that's new and material evidence, whether 3.156 applies. But she's not talking about the conditions that were in her April 2016 claim. She's talking about the conditions that are in the December 2016 claim, which is already the effective date that she has. Did the board at least have an obligation to go through that analysis and say, is this new and material evidence for anything that's still pending? And then say, it isn't. It doesn't look like they even did that. So I think they do not, and I think Guginous explicitly says that they do not. And this is page seven of the opinion, or I believe page 720 of the reporter, that the board need not explicitly determine whether a claim constitutes new and material evidence relating to a previous claim when the two claims are separate for effective date purposes and the conditions underlying the claims have no apparent connection to one another. I think what the board is obligated to do, and what it did, is to consider what is the earliest effective date that we can grant for this condition now that we've service-connected it. When is the earliest live stream where the veteran has submitted this claim? And that is what the board did here, and that's at appendix pages 112 to 114. It goes through the effective date analysis, and on page 113, it explicitly makes a finding that absent any evidence that the veteran attempted to appeal the prior denial, that's the 2009-2010 claim stream that closed, or file a claim prior to December 2016, the board cannot assign an effective date for the grant of service connection for tinnitus or the lumbosacral strain earlier than December 26, 2016. So that's a specific finding that that's the earliest that you've filed a claim for those conditions. As a practical matter, what is the process that the board would go through in making a determination as to what the earliest date is? Presumably they would have to look at, whether triggered by a request from her or otherwise, they would have to look at any prior claims that were made, right? And they would have to determine, I take it, well, those claims either don't relate to the current claim, or they do. If they do, you jump back if it's within the one-year period, and if they don't, then you move on. But isn't that necessary for the board to do in order to determine what the earliest date is? So I think that they, obviously they need to look at sort of what is the earliest live stream, and they did that here. They looked at, you know, and again, this is appendix pages 112 to 113, that she had, for example, this prior 2009 claim that was denied in 2010, that that became final. They considered whether she appealed that case or whether that became final, and they made a finding that between that final denial and December 26, 2016, she had not made a claim for those conditions and that there was no evidence that she pursued those. And I believe, Mr. Connolly, they were making a finding either expressly or implicitly that what happened in April didn't relate to what was claimed in December. I think that's right. And I believe... Therefore, are we arguing over whether they needed to say that expressly with respect to each prior claim that was made that could conceivably be attached as a timing for purposes of establishing the timing of the effective date? I mean, I think certainly they do not have to go through the exercise of explicitly saying with, you know, every filing that this also doesn't count, this also doesn't count. But you're saying, I think, in response to my question, you're saying they do have to go through that exercise, at least without saying it, they have to go through it in order to determine whether there is an earlier effective date, right? I think that's right. And I think they did that here. When they look back to see sort of when is it that the claim was filed and what is the earliest sort of live stream for this condition that exists, you know, they're looking back at all the evidence that they have before them. And in this case, they found that there was no evidence that there was a claim for any of these three conditions before December 26, 2016, which is the effective date that they granted her. Well, in any event, there's no claim here that they didn't do that, right? I think that's right. Yeah, I believe Mr. Carpenter conceded that the April 2016 submission did not contain a claim for back pain, tinnitus or headache. And that the earliest live claim for any of either of those three conditions came in December, which is the effective date that she currently has. I think Mr. Carpenter maybe mentioned a second supplemental authority. I may be misremembering what he said. Did he mention a second case? So we filed a 28-J letter on Budinus. So I believe that was supposed to be the two. Okay, thank you. But I think procedurally there is not one for Spicer. Okay, thank you. So if there are no further questions from the Court, depending on how the Court chooses to interpret Ms. Lewis' arguments, we would ask that you either dismiss for lack of jurisdiction on the factual questions or affirm on the legal ones. Okay, thank you, Ms. Vonikova. Mr. Carpenter? Just to clarify, Your Honor, we did submit a supplemental authority on June 1st. I haven't seen it. I don't know. I'll try to confirm that it was received by the Court. I know that we filed it. I will make sure that it's for the Court. We're aware of the case now. The other thing that I'd like to clarify is that the government suggests that somehow there is a sequential process in establishing service connection and that you have to establish the existence of what they refer to as a present disability. That to me is the precise issue that was addressed by this Court in Spicer because Spicer dealt with a secondary condition that was the result of a service-connected condition that had no relationship whatsoever to service. And it was that service-connected condition which precluded the veteran from getting treatment for his knee condition. In any event, we do believe that there is not a one-size-fits-all process of a sequential analysis for establishing service connection and this Court's decision in Spicer establishing the but-for cause standard clarifies that. In relationship to Godinus, it's important to clearly understand that contrary to the representation of the VA, these are not the same facts and in fact the reopening that was made was not the reopening of the earlier tinnitus claim, etc., but the reopening of the PTSD and the hip claim. That was done in the same decision. So the Board had before it the reopening which established the ongoing or continuous claim for service connection for those conditions, both of which had been granted subsequently. And then they went on to grant these other conditions and to deny these other conditions an earlier effective date. So the claim to stream from the beginning of this claim with the PTSD claim was all part and parcel of what was before the Board. And we believe that that's the correct interpretation of 3.156B. Thank you, Your Honor. Thank you, Mr. Carpenter. Thank you, Ms. Fallencover. The case is submitted.